IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOUGLAS SLOAN, Individually, and as  :
Personal Representative for the Estate of  :
Susan Sloan  :
6342 Knollwood Drive  :
Frederick, MD 21701  :
Frederick County, MD  :
                                                                    :
           Plaintiff  :
                                                                     :
v.  :    Civil Action No. 18-3055
                                                                   :
CIGNA GROUP INSURANCE  :
Two Liberty Place  :
1601 Chestnut Street  :
Philadelphia, PA 19192  :
                                                                   :
and  :
                                                                   :
PRA HEALTH SCIENCES  :
4130 ParkLake Avenue, Suite 400  :
Raleigh, N.C. 27612  :
                                                                   :
          Defendants.  :

**COMPLAINT**

COMES NOW the Plaintiff, Douglas Sloan, Individually, and as Personal Representative for the Estate of Susan Sloan, by and through his attorneys, John M. Quinn, Esquire, Kathleen L. Wright, Esquire and Ethridge, Quinn, Kemp, McAuliffe, Rowan & Hartinger, and sues the Defendants, CIGNA Group Insurance (hereinafter referred to as "CIGNA") and PRA Health Sciences (hereinafter referred to as "PRA" or "employer"), and for cause states as follows.

**I.  INTRODUCTION**

1.  Plaintiff's wife, Susan Sloan, was employed by Defendant PRA Health Sciences in March of 2016. As part of her benefits package, Ms. Sloan was provided

with a life insurance policy issued by Defendant CIGNA. Ms. Sloan designated Plaintiff as the beneficiary of the life insurance policy proceeds. Shortly after beginning her employment, Ms. Sloan was diagnosed with Stage IV pancreatic cancer and took a leave of absence from work.

2. While Ms. Sloan was out of the office on short-term disability, her benefits continued and her employer, PRA, regularly communicated with Ms. Sloan concerning her cancer treatments and prognosis. Ms. Sloan's communications with her Human Resources department and administrators demonstrate that all parties believed Ms. Sloan would return to work.

3. However, PRA unexpectedly stopped paying the premiums on Ms. Sloan's life insurance policy as of September 30, 2016, without providing any notice whatsoever to Ms. Sloan. No premium was paid by PRA in October of 2016. As a result, Ms. Sloan's coverage under the life insurance policy was terminated as of October 1, 2016.

4. PRA and/or CIGNA were required under Federal and State law and the terms of the life insurance policy to provide Ms. Sloan with written notice of (a) PRA's decision to stop paying premiums; and (b) Ms. Sloan's right and ability to convert her coverage to an individual policy with CIGNA. Neither of these notices was provided by the Defendants.

5. Ms. Sloan lost her battle with cancer in December of 2016. In early January of 2017, Plaintiff filed a claim for life insurance benefits under Ms. Sloan's policy. Plaintiff's claim, and his subsequent appeal, were denied by CIGNA because PRA stopped payment of premiums and Ms. Sloan's coverage was never converted to an

individual policy.  Defendants' failures caused Plaintiff a financial loss of $360,000.

## II. JURISDICTION AND VENUE

6. This is an action filed pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(1)(B) and 29 U.S.C. §1132(a)(3), asserting claims for benefits from a life insurance policy and for breach of fiduciary duties.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because it is a civil action arising under the laws of the United States, and pursuant to ERISA §502(e)(1), 29 U.S.C. §1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

8. This Court has personal jurisdiction over the Defendants because they are headquartered and transact business in the United States and because ERISA provides for nationwide service of process. §502(e)(2), 29 U.S.C. §1132(e)(2). The district courts of the United States have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for under ERISA. §502(f), 29 U.S.C. §1132(f). Additionally, Defendant PRA employed Plaintiff's wife, Susan Sloan (deceased), in the District of Maryland and CIGNA issued Ms. Sloan the life insurance policy at issue while she was living in Maryland.

9. Venue is proper in this District pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because violations of ERISA occurred in this District and Defendants' employees may be found in this District.  Venue is also proper in this District pursuant to 28 U.S.C. §1391 because the Defendants conduct business in this District and a

substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

### III. PARTIES

10. Plaintiff is a resident of Frederick, Maryland. He was married to Susan Sloan for more than 25 years before her passing in December of 2016. Ms. Sloan was an employee of PRA Health Sciences. Pursuant to her employment with PRA, Ms. Sloan was issued a life insurance policy through CIGNA Group Insurance. Plaintiff was the designated beneficiary of this life insurance policy.

11. Defendant CIGNA Group Insurance is a Pennsylvania corporation engaged in the insurance business and insures numerous persons such as Susan Sloan within the State of Maryland.

12. Defendant PRA Health Sciences is a contract research organization ("CRO") headquartered in Raleigh, North Carolina. PRA employed Susan Sloan as a clinical trial team manager based in Maryland.

### IV. SUBSTANTIVE ALLEGATIONS

13. In March 2016, Susan Sloan signed an Offer Letter and Employment Agreement to begin employment with PRA Health Sciences as a clinical trial team manager.

14. As part of her employment benefits with PRA, Ms. Sloan was issued a life insurance policy through CIGNA Group Insurance (policy number FLX 963879)("the policy"). The policy was underwritten by the Life Insurance Company of North America ("LINA"), which is a subsidiary of CIGNA. Ms. Sloan named her husband, Plaintiff

4

Douglas Sloan, as the beneficiary of this policy. The policy provided benefits in the amount of $360,000[1].

15. In May of 2016, Ms. Sloan was diagnosed with Stage IV pancreatic cancer. She continued working with PRA through mid-June of 2016. Ms. Sloan applied for short-term disability benefits, which were approved as of June 20, 2016. Ms. Sloan received these benefits through October 7, 2016.

16. Ms. Sloan later applied for long-term disability benefits, but this claim was denied on November 17, 2016 because her diagnosis was considered to be a "pre-existing" condition, for which benefits are not provided during the first 12 months of coverage. She did not return to work after June 20, 2016. Ms. Sloan's condition worsened and she passed away on December 1, 2016.

17. On January 6, 2017, Plaintiff Douglas Sloan filed a claim for Group Term Life Insurance benefits under the policy. On February 7, 2017, Plaintiff's claim was denied as Defendant CIGNA informed him that Ms. Sloan's coverage had been terminated before her death and no application had been submitted to convert Ms. Sloan's group term policy to an individual policy.

18. After an extensive investigation by Plaintiff, the following facts were determined. The CIGNA Group Life Insurance Certificate contains these provisions:

> **Conversion Privilege for Life Insurance**
> Each Insured may convert all or any portion of his or her Life Insurance that would end under the Policy due to:
>
> 1. termination of employment;

---

[1] Basic Life Insurance benefits of $240,000 (2x Base Annual Earnings) + Supplemental Life Insurance benefits of $120,000.

2. termination of membership in an eligible class under the Policy;
3. termination of the Policy.

    \*  \*  \*  \*  \*

To apply for conversion insurance, the Insured must, within 31 days after coverage under the Policy ends:

1. submit an application to [the Insurance Company]; and
2. pay the required premium.

Evidence of insurability is not required.

    \*  \*  \*  \*  \*

*Extension of Conversion Period*
If an insured is eligible for conversion insurance and is not notified of this right at least 15 days prior to the end of the 31-day conversion period, the conversion period will be extended. The Insured will have 15 days from the date notice is given to apply for conversion insurance. In no event will the conversion period be extended beyond 90 days. Notice, for purpose of this section, means written notice presented to the Insured by the Employer or mailed to the Insured's last known address as reported by the Employer.

  19.  Attached to the Group Life Insurance Certificate is the following legal notice:

> Under North Carolina General Statute Section 58-50-40, No person, employer, principal, agent, trustee or third party administrator who is responsible for the payment of group health or life insurance or health care plan premiums shall: (1) cause the cancellation or nonrenewal of group health or life insurance, hospital, medical or dental service plan, multiple employer welfare arrangement, or health care plan coverages and the consequential loss of the coverages of the persons insured by willfully failing to pay such premiums in accordance with the terms of the insurance or plan contract, and (2) willfully fail to deliver, at least 45 days prior to the termination of such coverages, to all persons covered by the group policy a written notice of the person's intention to stop payment of premiums. This written notice must also contain a

> notice to all persons covered by the group policy of their right to health insurance conversion policies under Article 53 of General Statutes Chapter 58 and their rights under the Federal Consolidated Omnibus Budget Reconciliation Act (COBRA).  Violation of this law is a felony. Any person violating this law is also subject to a court order requiring the person to compensate persons insured for expenses or losses incurred as a result of the termination of the insurance.

20. Defendant PRA stopped paying the premiums on Ms. Sloan's life insurance policy as of September 30, 2016.  No premium was paid by PRA in October of 2016. Ms. Sloan was never notified by PRA (the plan administrator) that they would cease payment of her premiums as of September 30, 2016.  As a result, Ms. Sloan's coverage under the life insurance policy was terminated as of October 1, 2016.

21. On October 31, 2016, Ms. Sloan received a call at 5:00 pm. from her patient advocate representative from the couple's health insurer, AETNA, informing her that their health insurance coverage would terminate as of 11:59 pm. that evening. Plaintiff and Ms. Sloan immediately contacted PRA's H.R. representative, Sarah Sanderson via email and requested paperwork to apply for continued coverage. In an email dated November 1, 2016, Ms. Sanderson told Ms. Sloan, "Please find attached the COBRA qualifying event notice and the general notice form.  The form states loss of coverage due to termination of employment.  Please note that this reason code was only used to trigger the COBRA event."

22. Ms. Sloan and Plaintiff believed that Ms. Sloan was still employed on a continued leave of absence and her benefits would continue, since she had not received any notification that she had been terminated and Ms. Sanderson said the "reason code"

of termination of employment that was listed on the form was only to trigger the COBRA event. As of November 1, 2016, Ms. Sloan's application for Long-Term Disability Benefits was still pending. It was not denied until November 17, 2016.

23. As a result of PRA's decision to stop payment of premiums on the life insurance policy as of September 30, 2016, Ms. Sloan's coverage under the policy ended on October 1, 2016.

24. Under the provisions of the policy, Ms. Sloan had the right to convert her group term life insurance policy into an individual life insurance policy once coverage was terminated. The policy required her to submit an application for conversion insurance within 31 days of termination of coverage. The policy also provided that if Ms. Sloan was not notified of this right at least 15 days prior to the end of the 31-day conversion period, the conversion period would be extended by 15 days, providing a maximum extension of 90 days.

25. Neither the insured employee, Susan Sloan, nor her husband, Plaintiff Douglas Sloan were ever notified of PRA's intention to stop payment of premiums, of Ms. Sloan's eligibility for conversion insurance, or of the need or right to apply for an individual policy within 31 days of termination of coverage.

26. On November 19, 2016, after the Long-Term Disability benefits application was denied, CIGNA mailed Ms. Sloan a letter inquiring if she would like to submit a claim for "Waiver of Premium" coverage on her life insurance policy. However, due to Ms. Sloan's age (61), she was never eligible for a waiver of premium. There was no mention in the letter of the fact that coverage under the policy had terminated.

27. Ms. Sloan and her husband were also never informed about the "Terminal Illness Benefit" under the policy which would have provided Ms. Sloan with a payment of up to 80% of the Life Insurance Benefit on the date she was determined to be terminally ill. Ms. Sloan was, in fact, terminally ill with Stage IV pancreatic cancer, despite the fact that she continued to receive treatment and hoped to survive.

28. Finally, after Ms. Sloan passed away on December 1, 2016, Plaintiff requested that Ms. Sanderson provide him with the necessary paperwork to file a claim for life insurance benefits. Ms. Sanderson completed certain parts of the form before sending it to Plaintiff. When asked, "Was the above [Susan Sloan] considered an Employee/Association Member until the Date of Death?" Ms. Sanderson answered, "Yes". In response to the question, "If the employee was not actively at work immediately prior to death, what was the reason?" Ms. Sanderson checked the box for "unpaid leave of absence" and did not check the box marked, "Discharge" or write in any other reason.

29. After Plaintiff's claim for benefits was denied by CIGNA, Plaintiff filed an appeal of this decision. CIGNA denied his appeal on May 11, 2017.

30. In a letter denying Plaintiff's appeal, CIGNA noted that it was PRA's responsibility to give Ms. Sloan written notice of her rights under the terms of the life insurance policy. PRA has denied this responsibility and alleges that the policy language required CIGNA to provide written notice to Ms. Sloan.

31. Regardless of whose responsibility it was under the policy provisions – PRA or CIGNA – neither entity provided Ms. Sloan or Plaintiff with any of the required

9

notices, resulting in Plaintiff's loss of the life insurance benefits.

## V. APPLICATION OF ERISA

32. The policy provides that as a participant in PRA Health Science's Insurance Plan, Ms. Sloan and her beneficiary are entitled to certain rights and protections under ERISA.

33. One of the protections provided under ERISA is noted as "Pruduent Actions by Plan Fiduciaries" in the policy and reads:

> "In addition to creating rights for plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefits or exercising your rights under ERISA."

34. The policy identifies the "Plan Administrator" as PRA Health Sciences. It provides, "The Plan Administrator has authority to control and manage the operation and administration of the Plan."

35. The policy also states that the Plan Administrator has appointed the Insurance Company as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company is given the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact.

## VI. FIRST CLAIM FOR RELIEF

### ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)
### ERISA §502(a)(3), 29 U.S.C. § 1132(a)(3)
### For Violations of The Terms of the Policy/Plan

36. Plaintiff re-alleges and incorporates herein by reference all prior allegations of the Complaint.

37. Under ERISA, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) a civil action may be brought by a participant or beneficiary to recover benefits due him under the terms of a plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan.

38. Under ERISA, § 502(a)(3), 29 U.S.C. § 1132(a)(3), a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

39. Under the terms of the life insurance policy/benefit plan, Ms. Sloan was entitled to receive written notice that PRA planned to stop payment of her insurance premiums and notice of her right under the policy to apply for conversion insurance. Notice had to be given within certain time periods outlined in the policy and in the North Carolina legal notice incorporated as part of the policy.

40. PRA and CIGNA failed to give Ms. Sloan any of the requisite written notice to which she was entitled. As a result, her coverage was terminated, no conversion

policy was in place, and Plaintiff failed to receive his benefits.

41.     Plaintiff has been damaged in the amount of $360,000 which represents all of the life insurance policy proceeds that he should have received.

42.     Under ERISA, §502(g), 29 U.S.C. § 1132(g), the Court in its discretion may allow a reasonable attorney's fee and costs of the action be awarded to the filing beneficiary.  Plaintiff is seeking payment of his attorney's fees and costs in having to file an appeal with CIGNA and file this suit.

### VII.     SECOND CLAIM FOR RELIEF

**ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)**
**For Violations of ERISA § 404, 29 U.S.C. § 1104**

43.     Plaintiff re-alleges and incorporates herein by reference all prior allegations of the Complaint.

44.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying the reasonable expenses of administering the plan, and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  Duties must also be discharged in accordance with the documents and instruments governing the plan.

45.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

46. Under ERISA, § 502(a)(3), 29 U.S.C. § 1132(a)(3), a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

47. Defendants were fiduciaries of the Plan/policy and owed Plaintiff and Ms. Sloan a duty to manage the plan and execute policy provisions using the "prudent man standard of care" as outlined above. Defendants breached their fiduciary duties by failing to inform Ms. Sloan of her rights under the policy, that payment of policy premiums by PRA would stop and did stop, and to provide her written notice that coverage under the policy had terminated.

48. Plaintiff has been damaged in the amount of $360,000 which represents all of the life insurance policy proceeds that he should have received.

49. Under ERISA, §502(g), 29 U.S.C. § 1132(g), the Court in its discretion may allow a reasonable attorney's fee and costs of the action be awarded to the filing beneficiary.  Plaintiff is seeking payment of his attorney's fees and costs in having to file an appeal with CIGNA and file this suit.

## VIII.  THIRD CLAIM FOR RELIEF

### Breach of Contract Under Maryland State Law

50. Plaintiff re-alleges and incorporates herein by reference all prior allegations of the Complaint.

51. Ms. Sloan entered into an Employment Agreement with Defendant PRA Health Sciences on or about March 8, 2016. Pursuant to this Agreement, Ms. Sloan agreed to work for PRA under the terms outlined in the Agreement and signed Offer Letter, and in exchange, she would receive a salary and benefits package. Part of the benefits package was a life insurance policy. PRA was designated as the Plan Administrator for the life insurance policy.

52. Defendant CIGNA issued a life insurance policy (contract) to Ms. Sloan for which premiums were paid, in exchange for benefits to be awarded to the beneficiary upon Ms. Sloan's death.

53. PRA had a contractual obligation to dutifully perform their job as Plan Administrator for the life insurance policy so that Ms. Sloan would receive all of the benefits to which she was entitled.

54. PRA breached its contractual obligation by failing to provide Ms. Sloan with the notices that were required to be given according to the law and the life insurance policy. This breach resulted in a termination of life insurance coverage, to which Ms. Sloan was entitled under the Employment Agreement/Offer Letter. PRA's failure caused Plaintiff to be denied the proceeds of the life insurance policy.

55. CIGNA had a contractual obligation under the life insurance policy to provide Ms. Sloan with the notices that were required to be given according to the law and policy provisions.

56. CIGNA breached its contractual obligation by failing to provide Ms. Sloan with the requisite notices, which resulted in a termination of life insurance coverage.

CIGNA's failure caused Plaintiff to be denied the proceeds of the life insurance policy.

57. The aforementioned breaches by the Defendants caused Plaintiff to incur a financial loss of $360,000 in life insurance proceeds.

## IX. **FOURTH CLAIM FOR RELIEF**

### **Negligence – Breach of Fiduciary Duty by Defendant PRA Health Sciences**

58. Plaintiff re-alleges and incorporates herein by reference all prior allegations of the Complaint.

59. PRA Health Sciences owed a fiduciary duty to Ms. Sloan as the Plan Administrator for the life insurance policy issued by CIGNA.

60. PRA was required to perform their duties as Plan Administrator in good faith, in a manner reasonably believed to be in Ms. Sloan's best interest; and with the care that an ordinarily prudent person in a similar situation would use under similar circumstances.

61. PRA negligently breached their fiduciary duty to Ms. Sloan by failing to provide Ms. Sloan with the notices that were required to be given according to the law and the life insurance policy. This breach resulted in a termination of life insurance coverage, to which Ms. Sloan was entitled under the Employment Agreement/Offer Letter. PRA's failure caused Plaintiff to be denied the proceeds of the life insurance policy.

62. The aforementioned negligence by Defendant PRA caused Plaintiff to incur a financial loss of $360,000 in life insurance proceeds.

## X.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants, jointly and severally, on all claims and requests that the Court award the following relief:

A.  Award, declare, or otherwise provide Plaintiff all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), Maryland State law, and/or any other applicable law that the Court deems proper and such appropriate equitable relief as the Court may order, including damages;

B.  Award to Plaintiff his attorney's fees and expenses as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable law or doctrine; and

C.  Award pre-judgment and post-judgment interest.


Dated: October 4, 2018                      Respectfully submitted,

ETHRIDGE, QUINN, KEMP,
McAULIFFE, ROWAN &
HARTINGER


 /s/ John M. Quinn, Esq.
John M. Quinn, Bar #00625
Kathleen L. Wright, Bar #30253
100 N. Court Street
Frederick, MD 21701
Phone (301) 698-8182
Fax (301) 831-4318
jmq@eqkmrh.com
klw@eqkmrh.com
*Attorneys for Plaintiff*

**REQUEST FOR JURY TRIAL**

Plaintiff respectfully requests a trial by jury in the above captioned action.

Dated: October 4, 2018                              Respectfully submitted,

ETHRIDGE, QUINN, KEMP, McAULIFFE, ROWAN & HARTINGER


  /s/ John M. Quinn, Esq.
John M. Quinn, Bar #00625
Kathleen L. Wright, Bar #30253
100 N. Court Street
Frederick, MD 21701
Phone (301) 698-8182
Fax (301) 831-4318
jmq@eqkmrh.com
klw@eqkmrh.com
*Attorneys for Plaintiff*